REEVES *v.* BEEN, TREASURER.

4-9219                                    228 S. W. 2d 609

Opinion delivered April 10, 1950.

*Warner & Warner,* for appellant.

*James A. Gutensohn* and *Daily & Woods,* for appellee.

DUNAWAY, J. This appeal presents for decision the proper construction of Act 327 of the Acts of 1941, as amended by Act 146 of the Acts of 1949 (Ark. Stats. (1947) § 80-201 *et seq.*), as it applies to Sebastian County. That Act relates to the powers and duties

of the County Board of Education and the County School Supervisor and provides for the payment of expenses of the Board and salary of the Supervisor.

The question is whether Sebastian County is to be treated as a composite unit of government under the provisions of said Act, or whether the two districts of Sebastian County for the purposes of the Act are to be considered as two separate and distinct counties, in view of the unique provision concerning Sabastian County contained in the State Constitution and subsequent acts of the Legislature in regard thereto.

The constitutional provision involved reads as follows: (Art. 13, § 5) ''Sebastian County may have two districts and two county seats, at which county, probate and circuit courts shall be held as may be provided by law, each district paying its own expenses.''

Pursuant to the constitutional authority thus granted, the General Assembly in 1875 enacted enabling legislation. See Acts 31 and 54 of the Acts of 1875 (January 12 and February 3, 1875, pp. 85 and 135). By virtue of these acts Sebastian County has been divided into two districts, the Fort Smith District and the Greenwood District, each with a county seat and each carrying out the functions of county government as if they were two separate and distinct counties. Sebastian County has, however, one County Judge, Sheriff and Collector, Clerk and Treasurer, which officers serve in their respective capacities in both districts.

Section 10 of Act 31 contains the provision that ''the said districts shall respectively defray all expenses of holding courts, opening and repairing highways, building bridges, providing for paupers, erecting public buildings and all other county expenses accruing within and on account of their respective districts, as if separate and distinct counties;''. In § 5 of Act 54 it is provided that the Assessor shall make separate assessments of the property in each district, keeping separate records thereof; and that the Collector shall ''in every particular proceed in the collection of the taxes for each of said districts as if said districts were separate counties.''

It is further provided in § 13 of Act 31 "That as to all matters not within the provisions of this act, the county of Sebastian shall be one entire and undivided county."

The instant case arose as a suit by appellant Roberts, claiming to be the County School Supervisor of all of Sebastian County and the other appellants, claiming to be the County Board of Education of the entire county, against appellee Been, Treasurer of Sebastian County, and others. Plaintiffs alleged that pursuant to Act 327 of 1941 as amended by Act 146 of 1949, Roberts had been employed as County School Supervisor for a term of two years at an annual salary of $4,480; that under the provisions of said Act the Supervisor's salary is payable from funds allotted for this purpose by the state and from funds set aside by the County Board from the County General Education Fund; that the state's contribution amounted to $1,780 for the year 1949-50, and that a balance of $5,983 was required to meet the expenses of the County Board and the salary of the Supervisor; that on the basis of the school enumeration this expense amounted to $0.4442 per capita, which resulted in the apportionment of a cost of $4,250.10 to be borne by the Fort Smith District of Sebastian County and $1,732.90 to be borne by the Greenwood District, as determined by the number of school children in each district.

On September 30, 1949, a voucher executed as required by law was presented to the County Clerk who issued a warrant in the amount of $184.64 to the order of the Supervisor for his salary then due, drawn on the "special fund set aside from the unapportioned County General School Fund." The Treasurer refused payment, on the ground that there was no such fund and that no part of the Supervisor's salary was payable from funds in the Fort Smith District. Plaintiffs prayed a mandatory injunction directing the County Treasurer to set aside from the County General School Fund of the Fort Smith District of Sebastian County the sum of $4,250.10, to be placed with the appropriate amount from the Greenwood District, in the special fund ordered set apart

by the Board to defray the office expenses and salary of the Supervisor.

The proof showed that in April, 1941, pursuant to the requirements of Act 327 of 1941, Sebastian County was divided into four zones for school purposes. Zone Three embraced the entire area of the Fort Smith District of the county, together with territory in the Greenwood District in which several small school districts were located. A special election was held in May, 1941, in each school district in the county for the election of members of the County Board of Education for Sebastian County. The County Judge certified the results of said election, at which one member of the Board from each of the four zones and one member at large were chosen.

The office of the County Board of Education was set up and has been maintained in the courthouse at Greenwood. No office has ever been maintained in the courthouse at Fort Smith. Until this suit was brought no effort was made to require the Fort Smith District of the county to share in meeting the expenses of the office or Supervisor's salary.

The powers and duties of the County Board of Education are set out in Ark. Stats. (1947) § 80-213. They include apportioning all school funds in the county as provided by law and in conformity to regulations of the State Board of Education; formation and dissolution of local school districts and changing the boundaries thereof; and causing "to be set aside from funds in the County General School Fund amounts necessary for the expenses of the Board and of the County School Supervisor's office." By Ark. Stats. (1947) § 80-229 it is further provided that the Board may determine the Supervisor's salary and other expenses of his office. That section reads in part: "Except for the state's contribution to the County Supervisor's salary, all funds provided herein shall be set aside from the unapportioned County General School Fund to a special fund by the County Treasurer."

In Ark. Stats. (1947) § 80-225 the powers and duties of the County Supervisor are enumerated. The pro-

visions of that section are too lengthy to set forth in detail. Generally, he is assigned the duty of supplying to all school districts in the county blanks furnished by the State Board of Education; keeping records concerning the zones into which the county is divided and the location of school houses, boundary lines of school districts and condition of roads therein. He makes all reports required by the State Department of Education concerning such matters as budgets, teacher qualifications and records, Teacher Retirement System and many other things. The Supervisor calls school elections (on September 27, 1949, an election on a bond issue in the Fort Smith School District was held, in connection with which he signed as Supervisor for the county numerous legal documents) and checks transportation reports, on the basis of which the various districts are reimbursed by the state.

Although, under the provisions of Act 327 of 1941 he does not directly supervise the operations of the Fort Smith School District, since it is a district having a superintendent, it is admitted by appellees that the Supervisor performs, among other things, the services above listed for the Fort Smith School District.

The Chancellor held that under the constitutional provision and statutory enactments regarding Sebastian County, as construed by this court, the county must be considered as two distinct units; and that the Fort Smith District cannot be compelled to pay any part of the salary or expenses of the County Supervisor of Education, whose office and primary work are in the Greenwood District of the county. Consequently, the complaint was dismissed for want of equity, from which action comes this appeal.

It is conceded by appellees that there is no constitutional inhibition against treating Sebastian County as one composite unit for school purposes, if in fact the Legislature has done this. It therefore is unnecessary to discuss the constitutional power of the General Assembly to treat as one county for school purposes, a

county which for other purposes has been considered as if it were two separate and distinct counties.

The effect of the above quoted provision of the Constitution and the legislative acts on the subject have been considered by this court in three cases. See *Williams* v. *State,* 160 Ark. 587, 255 S. W. 314; *Jewett* v. *Norris,* 170 Ark. 71, 278 S. W. 652; and *Scaramuzza* v. *McLeod, Commissioner of Revenues,* 207 Ark. 855, 183 S. W. 2d 55.

The historical background of this unique constitutional provision was discussed at length in the *Jewett* case *supra.* There it was held that the two districts of Sebastian County are to be regarded as separate counties within the meaning of Amendment 11 to the Constitution authorizing counties to issue bonds to pay outstanding indebtedness. In the *Jewett* case we said at p. 75: "It may be conceded that these districts are not counties within the ordinary meaning of that word; but we think, in view of the unique provision of the Constitution in regard to Sebastian County, that the two districts thereof are to be treated as if they were in fact separate counties, so far as their fiscal affairs are concerned."

The holding in the *Williams* case *supra,* was discussed in the *Jewett* opinion in this language: (p. 76) "We think there is nothing in the case of *Williams* v. *State,* 160 Ark. 587, 255 S. W. 314, which conflicts with the views here expressed. The point there decided was that an accused person applying for a change of venue might show that the inhabitants of Sebastian County as a political unit were so prejudiced against him that he would be entitled to have the venue changed to another county of the judicial circuit of which Sebastian County was a part. In other words, Sebastian County as a composite unit of government has not been destroyed, although the separate districts thereof have been given separate control of their respective fiscal affairs."

In the *Scaramuzza* case *supra,* the question was whether Sebastian County was to be considered as one unit in a local option election held under authority of Initiated Act No. 1 of 1942, or whether the two districts were to be treated in effect as two different counties.

In holding that they were to be treated as distinct units for this purpose we said at p. 861: "Now of course under this Act an election might be held in any township, municipality, ward or precinct of either district of Sebastian County, but we are also of the opinion that the Act authorized an election by the districts of Sebastian County, for the reason that the districts of that county are in effect separate counties, so far as the 'local concerns' of that county are involved."

As to the effect of the *Jewett* case, we further said at p. 862 of the opinion in the *Scaramuzza* case: "In other words, the separate districts of Sebastian county were as distinct as would be two separate counties, in the exercise of the jurisdiction conferred by § 28 of art. 7 of the Constitution which gives county courts jurisdiction over the fiscal affairs of the respective counties, and also confers jurisdiction in matters of local concern."

It is clear from this review of our holdings that in matters of local concern and fiscal affairs the two districts of Sebastian County have been treated as if they were separate counties. On the other hand, under the terms of the enabling act already quoted, as to all matters not within its provisions, the county of Sebastian is to be considered as one entire and undivided county. It is to be noted that nothing relating to schools was mentioned in said Act.

Article 14, § 4 of the Constitution, dealing with the subject of "Education," provides: "The supervision of public schools and the execution of the laws regulating the same shall be vested in and confided to such officers as may be provided for by the General Assembly." We recognize the legislative control thus given over matters of education in *Little River County Board of Education* v. *Ashdown Special School District*, 156 Ark. 549, 247 S. W. 70. In that case we held valid an act of the Legislature creating county boards of education and conferring on them powers formerly vested in county courts, as against a contention that the act violated Article 7, § 28 of the Constitution, giving county courts exclu-

sive original jurisdiction over the local concerns of their respective counties. In view of our holding in that case, we do not think the subject now under consideration is a "local concern" within the meaning of our earlier cases regarding Sebastian County.

An argument advanced by appellees against requiring the Fort Smith District of the county to help pay the Supervisor's salary is that the Fort Smith School District, under the terms of Act 327 of 1941, is not under his direct control, since it has a superintendent. A like contention was made in the *Ashdown* case, *supra*. We decided in that case, however, that the Legislature had the right to provide for part of a county superintendent's salary to be paid out of school funds which would otherwise go to the schools in cities having superintendents and which were, as here, expressly exempted from the supervision of county superintendents; county superintendents having general supervision in such cities by establishing uniform grades and by other ways tending to promote the public school system.

To support their contention that under Act 327 of 1941 the two districts of Sebastian County should be treated as two different counties, appellees cite this provision of the Act: (Ark. Stats. 1947, § 80-225) : "The County Court shall supply the County School Supervisor with a suitably equipped office at the County Seat." They argue that in Sebastian County there is no "County Court" of the entire county, but entirely distinct courts in each district; that there is not one "County Seat" for the whole County, but two. Even though the districts of Sebastian County may be treated as wholly separate counties under the Constitution, it is not mandatory that they be. For the purposes of the Act under consideration, the more sensible and practical construction would be to treat Sebastian County the same as the eleven other counties in Arkansas which have two districts for judicial purposes and have two courthouses. The single County Judge of Sebastian County then may provide the necessary office facilities at whichever "county seat" is most practicable. The construction urged by appellees would necessitate the

creation of two Boards of Education and the appointment of two County Supervisors, when admittedly only one is needed.

If Sebastian County is not one composite unit for school purposes, it is difficult to conceive of any purpose for which it would be so treated. To adopt appellees' theory of the case would render meaningless the section of Act 31 of 1875 providing that as to all matters not covered by said act, Sebastian County "shall be one entire and undivided county."

One other contention earnestly made by able counsel for appellees is based upon the statute defining the County General School Fund. Ark. Stats. (1947), § 80-721, reads as follows: "The general school fund of any county shall be composed of all money received from the Common School Fund (Public School Fund) of the State, the per capita tax on the inhabitants of the county, such fines, penalties and other money as shall be accrued to such funds in accordance with the law, and any appropriation from the general revenue of the county for common school purposes." It is argued that since this fund may include appropriations from the general revenue of the county, the effect of holding Sebastian County to be one unit under Act 327 of 1941, might be to require the use of county general revenues of one district for use in the other; and that such use of said funds was foreclosed by our opinion in *Jewett* v. *Norris, supra*. Since the record shows that for many years there has not in fact been any such appropriation to the General School Fund, we do not deem it necessary to construe the statute on this point.

In holding that Sebastian County is one unit for the purposes of Act 327 of 1941 as amended, and that there is a Sebastian County General School Fund from which there should be set aside the special fund for payment of the expenses and salary of the County School Supervisor as directed by the County Board of Education, we do not hold that the County Treasurer may not continue to keep the General School Fund separated as to the two districts of the county as has been his practice. We do hold that

from the school funds arising in Sebastian County as a whole, the Fort Smith District must pay its share of the expenses and salary of the County Supervisor as determined by the County Board of Education.

The decree is reversed and the cause remanded for proceedings in accordance with this opinion.

The Chief Justice dissents.

GRIFFIN SMITH, Chief Justice, dissenting. The opinion might well be captioned, "A Bill for an Act Entitled, . . . ," etc. The result—assuming it is desirable legislation—has nevertheless been arrived at without aid of the General Assembly. What happened is that the lawmaking body overlooked the two-district complications of Sebastian County. The omission has now been court-supplied on the theory that equity regards that as done which ought to have been done.

Still, there is an old-fashioned concept (though admittedly waning under present-day pressure) that the three coördinate branches of government were intended to be distinct, each functioning in its constitutional sphere. The persisting practice of nibbling a bit here and carving a slice there for the accommodation of expeditionary ends will afford temporary relief to minorities who thus profit through quick surgery, but the method is unsound. I would therefore affirm the decree and suggest that the need be explained to the Fifty-Eighth General Assembly.